N O T   F O R   P U B L I C A T I O N

FILED

SEP 29 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-91824-A-13G |
| | ) | |
| MARY ANN RAMOS, | ) | Docket Control No. FW-1 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM**

The debtor, Mary Ann Ramos, asks the court to confirm her amended chapter 13 plan, filed on February 7, 2006, over the objections of her largest general unsecured creditor, the Hackett 2004 Revocable Trust ("Hackett").  The chapter 13 trustee, Russell Greer, does not object to confirmation.

Hackett's claim totals $213,846.13 and is based upon the debtor's embezzlement of funds from Hackett's predecessor.  The debtor was convicted of a felony for this embezzlement and Hackett's claim was reduced to a civil judgment on March 5, 2000.

Additionally, as part of her criminal conviction, the debtor was ordered to make restitution.  There is, however, a dispute as to the amount the state court ordered as restitution.  Hackett

1  argues that $121,513.83 is due as restitution, while the debtor

2  counters that the restitution award totaled only $600 and that,

3  whatever the amount, it was restitution only for as long as she

4  was incarcerated.

5

6  **Objection Based on Section 1328(a)(3)**

7      Hackett asks that the plan not be confirmed because it does

8  not provide for payment in full of the restitution award.  The

9  plan proposes to pay only a 10% dividend on unsecured claims,

10  including Hackett's claim.  Hence, based on the amount demanded

11  in its proof of claim, $213,846.13, Hackett will receive

12  approximately $21,384.61.

13      The debtor correctly points out that even if the restitution

14  award was $121,513.83, nothing in 11 U.S.C. §§ 1322 or 1325(a)

15  requires payment in full of a restitution award.  Rather,

16  restitution awards are made nondischargeable by 11 U.S.C. §

17  1328(a)(3).  The debtor agrees that, to the extent Hackett's

18  claim is based on a criminal restitution award, she cannot

19  discharge that award.  However, even if Hackett's entire claim is

20  nondischargeable, a chapter 13 plan need not pay it in full.

21  Instead, whatever portion of the restitution award is not paid

22  will survive the completion of the plan and the debtor's

23  discharge.[1]

24  _____

25      [1]    The court finds and concludes that there is nothing in
    the language of the proposed plan that purports to change this
26  result.  That is, the plan's provisions do not allow for a
    broader discharge than that permitted by section 1328(a).  Cf.
27  Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 218 B.R.
    916, 925 (B.A.P. 9th Cir.1998), affirmed, 193 F.3d 1083 (9th Cir.
28  1999).

-2-

Only those unsecured claims that are entitled to priority status under 11 U.S.C. § 507(a) must be paid in full.  See 11 U.S.C. § 1322(a)(2).  A restitution award is not a priority claim even though it is nondischargeable.

This objection will be overruled.

**Objection Based on Section 1325(a)(4)**

The holder of a restitution claim is entitled only to what all other nonpriority unsecured creditors are entitled to in a chapter 13 case – the present value of what they would receive in a chapter 7 liquidation.  See 11 U.S.C. § 1325(a)(4).  If this "best interests" dividend is not provided for in the plan, the court must deny confirmation.

In this case, Hackett has not maintained in its objection to confirmation that the plan fails to satisfy section 1325(a)(4). The court's own review of the schedules confirms that Hackett would receive nothing in a chapter 7 liquidation.  Therefore, the proposed 10% dividend easily passes muster under section 1325(a)(4).

**Objection Based on Section 1322(a)(2)**

A priority tax claim must be paid in full as required by 11 U.S.C. § 1322(a)(2).

The Franchise Tax Board ("FTB") filed a proof of claim on November 22, 2005, demanding payment of $662.93 on a priority basis.  The claim filed by the Internal Revenue Service ("IRS") on November 17, 2005, demands $5,412.34 as a general unsecured claim and $1,239.30 as a priority claim.

-3-

As required by section 1322(a)(2), the plan provides for payment in full of the priority claims held by the FTB and the IRS.  In the plan, the debtor estimates these priority claims at $1,228.92 and $1,118.49, respectively.[2]

In connection with the original plan Hackett argued that the priority claims of the FTB and the IRS should be much higher than estimated by the debtor in her plan.  This is due to the fact that the debtor did not declare as income the money she embezzled from Hackett's predecessor.

Should the FTB, the IRS, or both of them, amend their claims to state significantly higher priority claims, the proposed plan promises to pay those claims.  The plan requires the debtor to pay in full all priority claims in whatever amount is demanded by those creditors filing such claims.  The plan provides:

The proof of claim, not the plan or the schedules,

-----

[2]    The fact that these two priority claims are less than the debtor estimates in the plan does not mean that the plan will end sooner than the proposed 60 months.  It means that the dividend paid to holders of Class 7 general unsecured claims, like Hackett, will be more than the 10% proposed by the plan. This is due to the fact that the plan provides that the 10% dividend is the minimum dividend payable to unsecured creditors.

The plan provides: "Unless all allowed unsecured claims are paid in full, the plan shall not terminate earlier than the stated term or 36 months, whichever is longer."  The plan also provides: "Holders of general unsecured claims not entitled to priority or "special treatment" in Class 6, and not secured by a lien on property belonging to Debtor, will receive no less than a 10% dividend pursuant to this plan."

The effect of these two plan provisions is to require payment of no less than a 10% dividend to holders of general unsecured claims.  If claims are less than expected, however, those unsecured creditors filing claims will receive a greater dividend because the debtor must continue plan payments until either creditors are paid in full or the plan's term expires.

-4-

shall determine the amount and classification of a
claim.  If a claim is provided for by this plan and a
proof of claim is filed, dividends shall be paid based
upon the proof of claim unless the granting of a
valuation or a lien avoidance motion, or the sustaining
of a claim objection, affects the amount or
classification of the claim.  Secured claims not listed
within Classes 1, 2, 3, or 4, and priority claims not
listed within Class 5 are not provided for by the plan.

As indicated above, the plan provides for the claims of the

IRS and the FTB.  If they file proofs of claim for more than is

estimated, the debtor must pay the amounts demanded unless the

debtor is able to successfully object to their claims.  If the

debtor is unable to successfully object, and the plan payments

cannot feasibly pay the claims, the debtor must amend the plan on

pain of dismissal.  See In re Kincaid, 316 B.R. 735 (Bankr. E.D.

Cal. 2004).[3]

Also, even though the debtor did not report any of the

embezzlement income on her income tax returns, it appears likely

that the belated assessment of taxes based on that income,

assuming such assessment is not time-barred, would not be

entitled to priority status.

When a debtor files a fraudulent return or willfully

attempts to evade or defeat a tax, the resulting tax is

nondischargeable in a chapter 7.  See 11 U.S.C. § 523(a)(1)(C).

However, there is no comparable exception to the chapter 13

---

[3]    Of course, if the proofs of claim filed by the FTB or
the IRS had indicated that their respective priority claims were
much higher than estimated by the debtor, the court might have
concluded that the plan did not comply 11 U.S.C. § 1325(a)(6).
Even though the plan provides that any priority claims will be
paid in full, if it were clear that the plan payments could not
possibly pay such claims in full, the plan would not be feasible.
That is, the income stream paid into the plan would be
insufficient to pay the promised dividends.

-5-

1 discharge, at least in cases like this one, filed prior to
2 October 17, 2005, when the Bankruptcy Abuse Prevention and
3 Consumer Protection Act of 2005 because effective. <u>See</u> 11 U.S.C.
4 § 1328(a)(2) (Oct. 17, 2005).

5     In a chapter 13 case, the issue is whether the tax is a
6 priority claim and therefore must be paid in full. <u>See</u> 11 U.S.C.
7 § 1322(a)(2). Deciding whether a tax is priority requires
8 parsing the interplay between 11 U.S.C. § 507(a)(8) and 11 U.S.C.
9 § 523(a)(1).

10     As explained in <u>In re Savaria</u>, 317 B.R. 395 (B.A.P. 9th Cir.
11 2004), stale tax claims that are nondischargeable under 11 U.S.C.
12 § 523(a)(1)(B) and (C) are not also entitled to priority
13 treatment under 11 U.S.C. § 507(a)(8). If the debtor has not
14 filed a return, or if the return was filed late and was filed
15 "after two years before the date of the filing of the petition,"
16 [as held in <u>Savaria</u> this denotes a period of indefinite duration
17 that begins two years before the petition was filed], or if the
18 debtor filed a false return, such taxes are nondischargeable in
19 chapter 7 under section 523 (a)(1)(B) and (C), but they are not
20 priority taxes by virtue of section 507(a)(8)(A)(iii).[4]

21     A tax is both nondischargeable under section 523(a)(1) and
22 entitled to priority status under section 507(a)(8)(A) only when
23 the tax was for a tax year ending prior to the filing of the
24 petition for which a return is last due after three years before

25 _____

26     [4] This discussion regarding the scope of a chapter 13
27 discharge vis a vis taxes of the type discussed above would be
entirely different had the debtor filed her petition on or after
28 October 17, 2005. <u>See</u> 11 U.S.C. § 1328(a)(2) (as effective
October 17, 2005).

-6-

the filing of the petition, was assessed within 30 days of the filing of the petition, or is a tax, excluding a stale tax made nondischargeable in a chapter 7 case by section 523(a)(1)(B) or (C), that could be assessed after the filing of the petition.

In this case, the embezzlement by the debtor occurred in 1996 and 1997.  The return for 1997, the year most proximate to the date the bankruptcy petition was filed, was due on April 15, 1998.  This was more than three years before the filing of the petition.  To be a priority claim under section 507(a)(8)(A)(i), the return had to be due after three years before the petition.

Nor were any taxes assessed to the debtor within 240 days of the petition and they were not the subject of an offer and compromise.

Hence, section 507(a)(8)(A)(ii) does not make the taxes priority claims.

Finally, while the taxes may be assessable after the filing of the petition, this is so because the debtor has allegedly failed to file returns, or filed them late, or filed fraudulent returns, or has otherwise evaded taxes.  Therefore, they are excluded from priority treatment by section 507(a)(8)(A)(iii).

It appears, then, that the plan complies with section 1322(a)(2).  It provides for payment in full of all priority claims.  It also appears that if the claims filed by the FTB or the IRS were amended to include a demand for unpaid income taxes based on the debtor's unreported embezzlement income, those claims would not be entitled to priority status.

///

///

-7-

1  **Objection Based on Section 1325(a)(3)**

2      Hackett's primary objection to confirmation is that the plan

3  has not been proposed in good faith as required by 11 U.S.C. §

4  1325(a)(3).

5      The requirement that a plan be proposed in good faith as

6  required by section 1325(a)(3) is frequently at issue whenever a

7  debtor proposes to pay no dividend or a nominal one on account of

8  a claim that would not be discharged in a chapter 7 case.  See In

9  re Warren, 89 B.R. 87, 93-94 (B.A.P. 9th Cir. 1988); In re

10 Padilla, 213 B.R. 349, 352-53 (B.A.P. 9th Cir. 1997).  Deciding

11 whether such a plan is a fair use of chapter 13 or is a disguised

12 chapter 7 that evades the discharge restrictions of 11 U.S.C. §

13 523(a) requires the court to determine the debtor's good faith by

14 reviewing the "totality of the circumstances."  Goeb v. Heid (In

15 re Goeb), 675 F.2d 1386, 1389-90 (9th Cir. 1982).

16      Proposing to pay no dividend, or a nominal one, to unsecured

17 creditors is not necessarily bad faith.  In re Goeb, 675 F.2d at

18 1389-90; In re Warren, 89 B.R. at 92.  It is only one of many

19 factors the court must consider when reviewing the totality of

20 circumstances surrounding a debtor's use of chapter 13.  See In

21 re Goeb, 675 F.2d at 1391; In re Warren, 89 B.R. at 92.

22      Other factors include: 1) the amount of the proposed

23 payments and the amount of the debtor's income surplus; 2) the

24 debtor's employment history, ability to earn, and likelihood of

25 future increases in income; 3) the probable or expected duration

26 of the plan; 4) the accuracy of the plan's statements of the

27 debts, expenses, and percentage of repayment of unsecured debt

28 and whether any inaccuracies are an attempt to mislead the court;

-8-

5) the extent of preferential treatment between classes of
creditors; 6) the extent to which secured claims are modified; 7)
the type of debt sought to be discharged, and whether any such
debt is nondischargeable in chapter 7; 8) the existence of
special circumstances such as inordinate medical expenses; 9) the
frequency with which the debtor has sought relief under the
Bankruptcy Code; 10) the motivation and sincerity of the debtor
in seeking chapter 13 relief; and 11) the burden that the plan's
administration would place upon the trustee.  <u>See</u> <u>In re Warren</u>,
89 B.R. at 93.

It is incumbent on a chapter 13 debtor to prove that a
proposed plan meets all confirmation requirements.  <u>See</u> <u>Meyer v.</u>
<u>Hill (In re Hill)</u>, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001).  To
be confirmed, a plan must be proposed in good faith.  <u>See</u> 11
U.S.C. § 1325(a)(3).  However, the court is entitled to presume a
debtor's good faith in proposing a plan in the absence of a
timely objection.  <u>See</u> Fed. R. Bankr. P. 3015(f).  There is no
presumption of good faith here given Hackett's objection.

Whether the totality of the circumstances demonstrates that
the debtor's plan has been proposed in bad faith is a very close
question.

In Hackett's view, the debtor is misusing chapter 13 to
obtain, in effect, a chapter 7 discharge that she would not
receive if she filed a chapter 7 petition.  There is some support
for this assertion, but the court concludes that the amended plan
may be confirmed.

Hackett's claim would be nondischargeable if this case
proceeded under chapter 7.  Its claim is based on an embezzlement

-9-

1   committed by the debtor over a two-year period.  The debtor

2   pleaded guilty to felony embezzlement and received a three-year

3   prison sentence.  There is no doubt that this conviction and

4   judgment would translate into a determination under 11 U.S.C. §

5   523(a)(4) & (a)(6) that Hackett's claim is nondischargeable in a

6   chapter 7 case.  The seventh <u>Warren</u> factor, then, favors a

7   finding that the plan has been proposed in bad faith.

8        Also, the debtor apparently made no significant effort to

9   repay Hackett in the years leading up to the petition.  Over

10  approximately five years she paid only $800 to Hackett.  While

11  this fact does not directly implicate any of the enumerated

12  <u>Warren</u> factors, the failure to attempt any concerted effort to

13  repay Hackett could be indicative of the debtor's determination

14  to avoid repaying Hackett, whether inside or outside a chapter 13

15  case.

16       Indeed, the obvious utility of chapter 13 to the debtor is

17  that it permits her to discharge Hackett's claim.  The debtor has

18  no secured debt in need of adjustment.  In fact, the debtor has

19  no secured debt, whether or not it is in need of adjustment (the

20  sixth <u>Warren</u> factor), and she has no special circumstances, such

21  as the need to deal with significant medical expenses, that might

22  explain a need for chapter 13 relief (the eighth <u>Warren</u> factor).

23       The debtor, however, owes the modest priority,

24  nondischargeable tax debt mentioned above.  That debt must be

25  paid in full.  Chapter 13 will permit her to do this.  Thus, even

26  though the debtor owes no secured debt, a chapter 13 plan will

27  permit her to repay her taxes.  So, while the sixth <u>Warren</u> factor

28  suggests that the plan has been proposed in bad faith, this is

-10-

1   militated somewhat by the debtor's need to repay priority tax
2   debt.
3        The court initially found, when considering confirmation of
4   the debtor's original plan, that the debtor's income was so low
5   that it could not be garnished.  Because the debtor was
6   effectively judgment proof, there was no need for her to proceed
7   under chapter 13.
8        This prior finding was based on a review of the debtor's
9   schedules and statements filed through November 15, 2005.
10  Schedule I indicated that the debtor was earning a mere $861.33
11  in monthly net income.  The debtor was also projecting no
12  increase in disposable income in the foreseeable future.  Over
13  the prior two years, as indicated in the Statement of Financial
14  Affairs, the debtor never had annual income in excess of $7,400.
15  Schedules A and B revealed no substantial assets and that all her
16  assets were exemptible.  In short, the debtor was judgment proof.
17       The only potential target for collection by Hackett or any
18  other creditor was the debtor's monthly income.  However, no more
19  than 25% of judgment debtor's earnings may be garnished.  See
20  Cal. Civ. Proc. Code § 704.070.  Even the 25% of garnishable
21  wages may be exempted if necessary to the debtor's subsistence.
22  See Cal. Civ. Proc. Code § 706.51.  Judging from the expenses
23  listed on the amended Schedule J filed on November 15, 2005, this
24  would have been an easy burden for the debtor to satisfy.
25       However, the factual record has changed.  Since the
26  confirmation hearing on her original plan, the debtor received a
27  modest wage increase and she has taken a second job.  These
28  changes are reflected in the amended Schedule I filed on February

-11-

27, 2006.  The debtor's income has increased more than 235% since she filed the petition and her amended plan commits the lion's share of that increase to creditors.[5]  The plan payment has increased 472%, from $100 to $472 a month.

This development is very significant.

First, under the amended plan, the debtor will be paying a substantial dividend, 10% or approximately $21,700, on account of unsecured claims while retaining no surplus income for her own benefit (the first <u>Warren</u> factor).

Second, the fact that the debtor has taken a second job in order to finance her plan speaks volumes about the debtor's motivation and sincerity in seeking chapter 13 relief for a legitimate reorganization (the tenth <u>Warren</u> factor).  She is making a good faith effort to pay the most she can for the maximum period allowed by law.  She is not doing the minimum possible.  In fact, the debtor has included her future husband's income and expenses in her income and expense projections to demonstrate that her impending marriage will help, not hinder, her financial reorganization.[6]

---

[5]    The increase was so significant that the court deferred ruling on confirmation until the debtor was able to establish a track record indicating that she would be able to make the higher plan payment.  Judging from the absence of a dismissal motion, the debtor has been able to make higher plan payment.

[6]    Hackett takes issue with the debtor's failure to list her future husband's income and expenses on the original Schedules I and J filed with the petition.  Nothing, however, in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires a single debtor to list a future spouse's income and expenses in the schedules.  Nonetheless, when the assertion arose that her future spouse's income and expenses might be relevant to the confirmability of the plan, the debtor amended her schedules

Third, the plan now proposes to commit all of the debtor's disposable income over the maximum plan length of 60 months (the third <u>Warren</u> factor).

Fourth, it appears that by taking a second job the debtor is attempting to maximize her income. In the short term, this will benefit the debtor's creditors while providing her with the longer term benefit of learning a trade as a dental assistant (the second <u>Warren</u> factor).

Finally, the fifth, ninth, and eleventh <u>Warren</u> factors are either neutral or slightly favor the debtor. Her plan proposes no preferential treatment of claims, and its administration will not place any significant or unusual burden on the chapter 13 trustee. Nor has the debtor filed repetitive bankruptcy petitions in an effort to discharge her liabilities.

This leaves the fourth <u>Warren</u> factor, the accuracy of the debtor's statements and schedules. Hackett maintains that the debtor's schedules are not accurate because they do not reflect the income tax attributable to the income received by virtue of the embezzlement. Hackett believes that this is part of an attempt to evade a tax debt.

The debtor counters that while she did not declare this income on her 1996 and 1997 tax returns, she was not aware that it was considered income for tax purposes. Further, she is not evading taxes because the assessment of additional taxes is likely time-barred.

---

to include this information. The court regards this as an indication of good faith.

Money obtained by illegal means is considered income. <u>See</u>
<u>James v. United States</u>, 366 U.S. 213 (1961). Nonetheless, it is
not difficult to believe that the debtor did not understand that
this "income" should have been included on her returns. <u>Cf</u>.
<u>Irvine v. Commissioner (In re Irvine)</u>, 163 B.R. 983 (Bankr. E.D.
Pa. 1994). She prepared her returns without an accountant or
other professional and there is no evidence that her own
training[7] should have alerted her to the need to declare this
income.

Given the facts, the failure to report this income is
unlikely to be considered "willful." That is, the income was not
reported with the purposeful intent of concealing the embezzled
funds from the tax authorities. <u>See</u> <u>Irvine</u>, 163 B.R. at 988.
And, as indicated in the testimony of Richard Goldstein, a
certified public accountant, given the lack of willfulness, the
tax authorities would be likely time-barred if they attempted to
assess additional taxes.

Hence, the failure to schedule these taxes is reflective of
the claims that are likely to be filed and allowed in this case.[8]

Hackett also takes issue with the scheduling of its claim.
While the claim was listed on Schedule F, the debtor did not
indicate that the claim had been reduced to a judgment or that

---

[7]    The debtor did bookkeeping work for Hackett's
predecessor. There is no evidence, however, that she has any tax
training or prepared returns for the predecessor.

[8]    The court notes that the IRS and the FTB have received
notice of all proceedings thus far in this case. To the extent
they may have been unaware of possible claims based on the
embezzled money, they are now aware of them. No proofs of claim
have been filed for such claims.

-14-

some part of it had been ordered paid as restitution.  However,
Hackett's claim was listed in an amount that approximates the
amount demanded in its proof of claim, and it was listed in
sufficient detail such that Hackett received notice of the case
in time to present its claim.  The court does not regard these
alleged deficiencies as material, likely to mislead the court or
anyone else, or indicative of bad faith.

Lastly, Hackett notes that the debtor listed an unsecured
claim at "$0.00" even though she admittedly owed over $6,000 to
the creditor.  The claim in question is a student loan.  Schedule
F indicates that the loan had been deferred until January 2006.
Hackett is correct in its assertion that the claim amount should
have been scheduled.  But, the court discerns no improper purpose
behind the debtor's failure to list the amount of the debt.  The
debtor gave the creditor notice of the filing of the petition,
and the creditor was able to file a timely proof of claim.[9]  The
amount it demanded does not cause the debtor's claims to exceed
the debt limits set by 11 U.S.C. § 109(e).[10]

Therefore, the court concludes that the debtor's schedules
and statements were substantially accurate.

All in all, the court concludes that this plan has been

[9]     The claim filed by Student Loan Finance Corp. was filed
on September 20, 2005, 19 days after the petition was filed.  Any
lack of detail in the schedules was supplied by the proof of
claim and it was supplied well before it was necessary to object
to either plan proposed by the debtor.

[10]    The court also notes that the amended plan makes no
attempt to prefer this nondischargeable student loan at Hackett's
expense.  See 11 U.S.C. §§ 523(a)(8), 1322(b)(2), & 1328(a)(2).
Any attempt to prefer this student loan would have implicated the
fifth Warren factor.

-15-

1  proposed in a good faith attempt to reorganize the debtor's
2  financial affairs.  As the debtor acknowledges, she made a
3  serious mistake when she embezzled from Hackett's predecessor.
4  Perhaps she should have made a more serious effort to repay this
5  debt before filing a bankruptcy petition.  However, considering
6  that the debtor was imprisoned for a portion of the period
7  leading up to this bankruptcy, and considering the impact of the
8  criminal conviction on her ability to earn money, it is doubtful
9  she had the resources to pay anything significant to Hackett.

10      The debtor's economic circumstances, however, are changing
11  for the better.  This is due in part to her efforts to educate
12  herself and start a new career.  It is also due in part to her
13  impending marriage.  These changes now permit her to confront her
14  past and repay a significant portion of what she owes.  While
15  Hackett would like more, the court sees no realistic likelihood
16  that it would receive more, in or out of this court.

17      The court concludes that the amended plan has been proposed
18  in good faith.

19      A separate confirmation order will be entered.

20  Dated: 29 Sept. 2006

21                          By the Court

22

23                          _____
24                          Michael S. McManus, Chief Judge
                            United States Bankruptcy Court
25

26

27

28

-16-